UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OSCAR ARNOLDO RIVERA ESPERANZA,

               Petitioner,

               v.

LADEON FRANCIS, in his official capacity as Acting
Field Office Director of New York Immigration and
Customs Enforcement; KRISTI NOEM, in her official
capacity as Secretary of Homeland Security; PAM
BONDI, in her official capacity as Attorney General,

               Respondents.

No. 25-CV-8727

<u>OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

      This is another case in a recent and growing line of cases in which a noncitizen was intercepted at the border and released on his own recognizance pending removal proceedings, only to later be detained by Immigration and Customs Enforcement ("ICE") pursuant to a new administrative policy. Petitioner Oscar Arnoldo Rivera Esperanza originally entered the United States in December 2023, by crossing over the border into El Paso, Texas. A few days later, he was served with a Notice to Appear charging him with removability under the INA, placed into removal proceedings pursuant to 8 U.S.C. § 1229a, and released on his own recognizance. At the time of his initial release, Mr. Rivera Esperanza was ordered to appear in immigration court in Manhattan on a later date. He did so, and was then instructed to return for a routine ICE check-in on October 21, 2025. He again did so. That afternoon, when Mr. Rivera Esperanza voluntarily walked into 26 Federal Plaza in compliance with the Government's order, he was detained by ICE without warning or an opportunity to be heard. That same day, Mr. Rivera Esperanza's sister filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on his behalf, asserting that his sudden

redetention violated his rights under the Due Process Clause of the Fifth Amendment. The Government responds that Mr. Rivera Esperanza is subject to mandatory detention under § 1225(b)(2)(A) as an alien who has not been formally admitted, and is thus owed no due process.

The primary question before the Court is which of two provisions of the Immigration and Nationality Act ("INA") governs Mr. Esperanza's detention: INA § 235(b)(2)(A), codified at 8 U.S.C. § 1225(b)(2)(A), pursuant to which a noncitizen's detention is mandatory, or INA § 236(a), codified at 8 U.S.C. § 1226(a), pursuant to which detention is discretionary. The subsequent question is whether his redetention violates the Fifth Amendment.

Consistent with hundreds of decisions issued by judges throughout the country—and *all* the ones issued in this Circuit—the Court concludes that § 1226(a) governs his detention and not § 1225(b)(2)(A), as the Government contends. And because the Government did not afford Mr. Rivera Esperanza any process before his redetention, his Fifth Amendment rights were violated. After concluding as much at a hearing on November 12, 2025, the Court granted Mr. Rivera Esperanza's petition for a writ of habeas corpus. It now explains in more detail its reasons for doing so.

## BACKGROUND

Mr. Rivera Esperanza is a 22-year-old citizen of El Salvador. Dkt. No. 19, Ex. 1 at 1. He entered the United States on December 31, 2023, Dkt. No. 19, Ex. 2 at 1; Pet. ¶ 20, and was intercepted near El Paso, Texas by Customs and Border Patrol. Dkt. No. 21 ("Giraldo Decl.") ¶ 4. The Department of Homeland Security ("DHS") then served him with a Notice to Appear, charging him as inadmissible under the INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i). *See* Giraldo Decl. ¶ 5. He was placed into removal proceedings pursuant to 8 U.S.C. § 1229a, and released on his own recognizance pending those proceedings. *See id.* ¶ 6–7; Dkt. No. 19, Ex. 3.

Following his release and up until his sudden redetention, Mr. Rivera Esperanza lived freely in the United States. The terms of his release required him to report for immigration proceedings as directed, surrender for removal if ordered, and comply with local, state, and federal laws. *See* Dkt. No. 19, Ex. 3. No evidence has been presented suggesting that he violated any of those conditions.

In July 2024, Mr. Rivera Esperanza filed an I-589 Application for Asylum, Withholding of Removal and Protection Under the Covenant of Torture, with the assistance of counsel. Giraldo Decl. ¶ 11; Dkt. No. 19, Ex. 4 at 2. On October 6, 2025, he appeared before an immigration judge for a master calendar hearing, during which an individual merits hearing on his asylum application was scheduled for October 4, 2027. Giraldo Decl. ¶ 13.

On October 21, 2025, Mr. Rivera Esperanza reported for a routine ICE check-in. Like many noncitizens before him, upon arrival, he was served with a form I-200 Warrant of Arrest and a form I-286 Notice of Custody Determination and placed into detention, where he remained until he was released by this Court on November 12, 2025. *Id.* ¶¶ 14–15; Dkt. No. 19, Exs. 5, 6; Dkt. No. 23; Dkt. No. 24. His sister, serving as his "next friend," filed a *pro se* habeas petition on October 21, 2025 at 5:52 p.m. *See* Dkt. No. 1. Shortly after this filing, which was made while he was still in this district, ICE transported Mr. Rivera Esperanza to Delaney Hall Detention Facility in Newark, New Jersey. *See* Giraldo Decl. ¶ 16; Dkt. No. 20 ("Resp'ts' Br.") at 7. He subsequently obtained *pro bono* counsel and filed an amended petition. *See generally* Dkt. No. 18 ("Petition" or "Pet.").

In his Petition, Mr. Rivera Esperanza asserts that his detention violates his due process rights under the Fifth Amendment. The Government counters that he is owed no constitutional due process and that his habeas petition should thus be denied, or that in the alternative, the most he is entitled to is a bond hearing before an immigration judge. For the reasons stated in its prior order, Dkt. No. 23, and those that follow, the Court agrees with Mr. Rivera Esperanza.

**LEGAL STANDARD**

Mr. Rivera Esperanza brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ . . . whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)).[1] "Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention." *Arevalo Lopez v. Sessions*, No. 18 Civ. 4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

**DISCUSSION**

**I.    Mr. Rivera Esperanza Is Detained Under 8 U.S.C. § 1226(a)**

The Court first addresses whether Mr. Rivera Esperanza was detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and is therefore "subject to mandatory detention, or pursuant to 8 U.S.C. § 1226(a) and subject to detention on a discretionary basis." *Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025).  Like the overwhelming majority of judges before it, the Court finds that he was detained pursuant to DHS's discretionary authority under 8 U.S.C. § 1226(a)—both at the border and upon his redetention—as is consistently represented in DHS documents and is evident from the statutory frameworks themselves.

Both provisions provide a framework for detaining or releasing noncitizens. Under 8 U.S.C. § 1225(b)(2)(A), the Government is authorized to detain a noncitizen "who is an applicant for admission" and "seeking admission." 8 U.S.C. § 1225(b)(2)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 287, 289 (2018). Individuals detained under § 1225(b)(2)(A) are not entitled to a bond hearing, though they can be released under a limited exception for "urgent humanitarian reasons

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A). *See Lopez Benitez*, 2025 WL 2371588, at *3. The INA "also authorizes the Government to detain certain aliens already in the country" under 8 U.S.C. § 1226(a), which establishes a discretionary framework for arrest, detention, and release. *Jennings*, 583 U.S. at 289. "For decades, 'DHS's longstanding interpretation' has been that § 1226, and not § 1225, 'applies to aliens who have crossed the border between ports of entry and are shortly thereafter apprehended.'" *Savane v. Francis*, No. 25-cv-6666 (GHW), 2025 WL 2774452, at *5 (S.D.N.Y. Sept. 28, 2025) (quoting *Biden v. Texas*, 597 U.S. 785 (2022), Dkt. No. 21-954, Tr. of Oral Argument at 44:24–45:2); *see also Barco Mercado v. Francis*, No. 25-cv-6582 (LAK), 2025 WL 3295903, at *1 (S.D.N.Y. Nov. 26, 2025).

Despite that longstanding practice, two recent developments have shifted DHS's and the Board of Immigration Appeals's ("BIA") stance on which provision governs. First, in July 2025, DHS issued a memorandum urging the increased scope of § 1225(b)(2)(A), stating: "An 'applicant for admission' is an alien present in the United States who has not been admitted or who arrives in the United States . . . . Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole. . . . For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (hereinafter "Lyons Memo") (last visited Nov. 10, 2025).

Subsequently, on September 5, 2025, the BIA issued a decision, *Matter of Yajure Hurtado*, binding on all immigration judges, which holds that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See*

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Numerous courts in this district have rejected DHS's attempts to rely on *Yajure Hurtado* to deny noncitizens their due process rights. *See e.g.*, *Romero Perez v. Francis*, No. 25-cv-8112 (JGK), 2025 WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025) ("*Yajure Hurtado* rested on the premise that detention of noncitizens arrested while residing in the United States is governed by 8 U.S.C. § 1225(b)(2)(A), rather than § 1226(a). . . . [T]hat premise is incorrect; detention in these circumstances is governed by § 1226(a).").

In determining that § 1226(a) applies, the Court looks to both the face of the Government's own exhibits and the relevant statutory framework. Under either analysis, it is clear that Mr. Rivera Esperanza's detention in 2023 and his redetention in 2025 are governed by § 1226(a). With respect to his initial detention, the Order of Release on Recognizance, issued on January 2, 2024 states: "You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act [i.e., § 1226(a)] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance," on the condition that he would report for immigration hearings, surrender for removal if so ordered, and refrain from violating any laws. *See* Dkt. No. 19, Ex. 3. Similarly, the arrest warrant issued on October 21, 2025 authorized Mr. Rivera Esperanza's arrest pursuant to "section[] 236 . . . of the Immigration and Nationality Act [i.e., § 1226]." *Id.*, Ex. 5. And Mr. Rivera Esperanza's Notice of Custody Determination issued on October 21, 2025 also authorized his detention under § 1226(a), providing: "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act . . . I have determined that, pending a final administrative determination in your case, you will be: Detained by the Department of Homeland Security." *Id.*, Ex. 6. Indeed, the Lyons Memo itself explicitly acknowledges that the documents Mr. Rivera Esperanza was charged with derive their authority from § 1226(a): "Moving forward, ICE will not issue Form I-286, *Notice of Custody*

*Determination*, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of title 8 of the Code of Federal Regulations." Lyons Memo at 2 (emphasis in original).

In concluding that § 1226(a) governs as a matter of law, other courts have similarly relied on the fact that the government's exhibits, including the arrest warrant and notice of custody determination, make clear that the petitioner was detained pursuant to § 1226(a). In *Lopez Benitez v. Francis*, for example, the court stated that "regardless of what Lopez Benitez's designation *could have been* when he was initially arrested in 2023, there is no dispute that: (1) he *was* in fact designated for treatment under § 1226 at that time; (2) his most recent warrant from last month was also issued subject to § 1226; and (3) Respondents detained him on that basis." *Lopez Benitez*, 2025 WL 2371588, at *4–5 (emphasis in original). Like in *Lopez Benitez*, "it is indisputable that Respondents have consistently treated [petitioner] as subject to § 1226, and that [the Government] most recently detained him . . . pursuant to that statute. Indeed, the record is devoid of any reference to § 1225 in connection with [his] arrest and detention until they filed their Opposition to his Petition." *Id.* at *5. The only conclusion that can be drawn from the above facts is that the Government detained Mr. Rivera Esperanza as a noncitizen "already in the country," *Jennings*, 583 U.S. at 289, pursuant to § 1226(a), and not as someone still seeking admission under § 1225(b)(2)(A).

Even if the Government's exhibits did not clearly establish that Mr. Rivera Esperanza was detained pursuant to § 1226(a), the Court would nonetheless conclude as much based on a close reading of the two relevant statutory provisions, as over 350 district courts to have considered the administration's new position have similarly held. *See Barco Mercado*, 2025 WL 3295903, at *13; *see also Rajalingam v. Freeden*, 25-CV-6717 (EAW), 2025 WL 3480641 (W.D.N.Y. Dec. 4, 2025);

*Wang v. Genalo*, 25-cv-9460 (JGK), 2025 WL 3471222 (S.D.N.Y. Dec. 3, 2025); *Liu v. Almodovar*, 25 Civ. 9256 (ER), 2025 WL 3458633 (S.D.N.Y. Dec. 2, 2025); *Obregon v. Francis*, 25 Civ. 9465 (KPF), 2025 WL 3465517 (S.D.N.Y. Dec. 2, 2025); *Rodriguez-Acuri v. Almodovar*, 25-cv-6065 (NJC), 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025); *J.I.T. v. Francis*, 25-CV-6749 (MMG), 2025 WL 3295851 (S.D.N.Y. Nov. 26, 2025); *McDonald v. Francis*, 25-CV-9355 (JAV), 2025 WL 3295906 (S.D.N.Y. Nov. 26, 2025). Although there have been roughly a dozen decisions—all out of Circuit—holding that § 1225(b)(2)(A) governed, *Barco Mercado*, 2025 WL 3295903, at *14, the Court agrees "with the overwhelming weight of authority," in concluding that Mr. Rivera Esperanza "[wa]s detained under Section 1226(a), not—as Respondents argue—under § 1225(b)(2)(A)." *Guzman Cardenas v. Almodovar*, No. 25-CV-9169, 2025 WL 3215573, at *2 (JMF) (S.D.N.Y. Nov. 18, 2025). Among others, the Court is persuaded by the reasoning of Judge Liman in *Tumba Huamani v. Francis*, No. 25-cv-8110 (LJL), 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025), Judge Ho in *Lopez Benitez v. Francis*, 2025 WL 2371588, and Judge Subramanian in *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025). These cases all held that § 1226(a) governs the detention of a noncitizen who was initially detained at the border, released on his own recognizance, and then re-detained while living in the United States.

Detention under § 1225(b)(2)(A) "applies to a noncitizen who meets three criteria: (1) one who is an applicant for admission . . . ; (2) who is actively seeking admission to the country, and (3) whom an examining immigration officer determines is not clearly and beyond a doubt entitled to be admitted." *Lopez Benitez*, 2025 WL 2371588, at *6. After decades of interpreting § 1225(b)(2)(A) to apply to noncitizens apprehended at the border, who have not yet entered the United States, the Government now contends that § 1225(b)(2)(A) applies to *any* noncitizen present in, but not yet "admitted" to, the United States. *See Barco Mercado*, 2025 WL 3295903, at

*1–2 (discussing the government's longstanding distinction between § 1225(b)(2)(A) and § 1226(a)). Under 8 U.S.C. § 1101(a)(13)(A), the term "admitted" means, with respect to an alien, the lawful entry of the alien "into the United States after inspection and authorization by an immigration officer." Thus, even if noncitizens are released on their own recognizance or on parole pending removal proceedings, they are not considered "admitted" into the United States unless they have been inspected and authorized for entry. The Government's present position greatly broadens the reading that it has taken in the past, one that disregards the second threshold requirement of § 1225(b)(2)(A)—that the noncitizen be actively seeking admission—thereby expanding its reach to many noncitizens whose detentions would otherwise be governed by § 1226(a). Although Mr. Rivera Esperanza is technically "an applicant for admission," as are many undocumented noncitizens living in the United States, "it does not follow that [he] is necessarily 'seeking admission' under Section 1225(b)(2)." *Tumba Huamani*, 2025 WL 3079014, at *3

The Court recognizes the notion that a noncitizen who is an applicant for admission is no longer seeking admission "might sound counterintuitive at first." *Id.* After all, in common parlance, someone who is an applicant for admission to say, a university, is seeking admission to that school up until they are admitted, rejected, or withdraw. But while a cursory review of the statutory provision may give a reader pause, a more in-depth one reveals the daylight between the two terms. The contrary interpretation advanced by the Government—that all noncitizens who have yet to be admitted are seeking admission—ignores the entirety of the text and violates a foundational principle of statutory interpretation: the rule against surplusage. *Id.* at *4; *see also Diaz Martinez*, 792 F. Supp. 3d at 218; *Lopez Benitez*, 2025 WL 2371588, at *6. Both terms exist in the same sentence, and thus logically serve different purposes. As Judge Subramanian remarked in *J.G.O.*, "That question is puzzling at first blush. How can an 'applicant for admission' not 'seek

admission?' This oddity is explained by the statutory definition of the phrase 'applicant for admission.'" 2025 WL 3040142, at *3.

Under § 1225(a), an "applicant for admission" is defined as: "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "That definition doesn't require an application of any sort. All that's needed is presence without admission—in other words, it applies to the great number of undocumented immigrants who currently live here." *J.G.O.*, 2025 WL 3040142, at *3. Seeking admission means something more than mere presence. Most courts have held that it refers to "some active desire or process toward admission," *id.*, and have emphasized that the "present-tense active language" underscores the active nature of the word. *Lopez Benitez*, 2025 WL 2371588, at *6; *see also Diaz Martinez*, 792 F. Supp. 3d at 218–20. Seeking is "written in the present-progressive tense, which 'is used to refer to an action or a state that is continuing to happen.'" *J.G.O.*, 2025 WL 3040142, at *3 (citing *Progressive Tense,* Merriam Webster Online, https://www.merriam-webster.com/dictionary/progressive%20tense). "Putting that all together, 'seeking admission' requires an alien to *continue* to want to *go into* the country." *Id.* (emphasis in original). Here, however, Mr. Rivera Esperanza is "already here," and as the court in *J.G.O.* noted, "you can't go into a place where you already are." *Id.* "Indeed, the above reasoning only gains in weight and certainty by addition of the fact that Petitioner was not detained until more than a year after [his] initial encounter. At that point, it cannot be denied that [he] was already in the country, after having effected an entry." *Diaz Martinez*, 792 F. Supp. 3d at 222–23.

The Court's analysis draws a parallel between the term "arriving alien" and "an applicant . . . seeking admission." An "arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 U.S.C. § 1001.1(q). "In other words,

an 'arriving alien' is an 'applicant' who is also *doing* something: coming or attempting to come

into the United States." *Diaz Martinez*, 792 F. Supp. 3d at 219 (emphasis in original). Several

courts have held that "DHS's own regulations understand an 'applicant . . . seeking admission' to

be synonymous with an 'arriving alien.'" *Tumba Huamani*, 2025 WL 3079014, at *4; *Lopez*

*Benitez*, 2025 WL 2371588, at *7 (citing 8 C.F.R. § 235.3(c)(1)). Indeed, Mr. Rivera Esperanza's

detention forms reflect this distinction. The Notice to Appear served on him on January 2, 2024

clearly states that he is "an alien present in the United States who has not been admitted or

paroled," and not an "arriving alien." Dkt. No. 19, Ex. 2. Accordingly, Mr. Rivera Esperanza was

not an "arriving alien" or an "applicant . . . seeking admission," but rather a noncitizen already

present in the United States. As such, he, and others like him, are "not subject to the mandatory

detention provision of Section 1225, and [are] instead subject to the discretionary provision of

Section 1226." *Tumba Huamani*, 2025 WL 3079014, at *5.

Which statutory framework governs is also clear from the way in which Mr. Rivera

Esperanza was released into the United States pending removal proceedings. There are two

primary ways that noncitizens can enter the country after an initial detention and before they are

formally admitted. Noncitizens detained under § 1226(a) can be released on conditional parole,

*see Diaz Martinez*, 792 F. Supp. 3d at 215–16; *Tumba Huamani*, 2025 WL 3079014, at *5, while

noncitizens apprehended under § 1225(b)(2)(A) can only be paroled "for urgent humanitarian

reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also Diaz Martinez*, 792 F.

Supp. 3d at 215. After his initial detention, Mr. Rivera Esperanza was released on his own

recognizance, a type of conditional parole available only under § 1226(a). As the Ninth Circuit

noted in *Ortega-Cervantes v. Gonzales*, it is "apparent that the INS used the phrase 'release on

recognizance' as another name for 'conditional parole' under § 1226(a)." 501 F.3d 1111, 1115–16

(9th Cir. 2007). The BIA similarly acknowledged the distinction between the two types of release in *Matter of Olty Cabrera-Fernandez*, holding that releasing a noncitizen on his own recognizance was the same as "conditional parole under section 236(a)(2)(B) of the INA, 8 U.S.C. § 1226(a)(2)(B)," and "legally distinct from release on humanitarian parole under section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A)." 28 I. & N. Dec. 747, 749 (B.I.A. 2023). Here too, Mr. Rivera Esperanza was released on his own recognizance and not paroled for humanitarian reasons.

During oral argument, the Government asserted that the references to INA § 236 (i.e., § 1226(a)) were a relic of default forms used by DHS officers and not a result of the agency's decision to detain Mr. Rivera Esperanza under § 1226(a). *See* Tr. of Oral Argument, 11:18–12:10 ("[T]hose forms were developed during the time when the agency had a different interpretation of 1225 and 1226. So I don't think that there should be a lot of weight put on . . . certain forms an immigration officer was using . . . ."). These arguments are unavailing. As the court in *Diaz Martinez v. Hyde* recognized, "[t]his distinction reflects more than an officer's choice of paperwork because, although both styled as 'parole,' these two mechanisms serve fundamentally different purposes." 792 F. Supp. 3d at 215. Under § 1182(d)(5)(A), § 1225(b)'s corresponding parole statute, noncitizens are permitted to enter the country "subject to a reservation of rights by the Government that it may continue to treat the non-citizen 'as if stopped at the border.'" *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). Conditional parole, available under § 1226(a), on the other hand, "releases a non-citizen already in the country from domestic detention." *Id.* Here, it would "make little sense to talk about paroling" Mr. Rivera Esperanza "into the United States," under § 1225(b) since he "was already here." *Id.* at 216.

The Government's position would "expand § 1225(b) far beyond how it has been enforced

historically, potentially subjecting millions more undocumented immigrations to mandatory detention," while rendering § 1226(a) virtually obsolete. *Lopez Benitez*, 2025 WL 2371588, at *8. As Judge Kaplan aptly noted in *Barco Mercado v. Francis*, "[a]fter all, giving Section 235 as broad of a reach as respondents urge would narrow dramatically the reach of Section 236. If, as respondents argue, Section 235 mandated detention for all noncitizens who enter the country illegally, then it is not clear under what circumstances Section 236(a)'s authorization of detention on a discretionary basis would ever apply." 2025 WL 3295903, at *6. While it might still "apply to a subset of noncitizens who are lawfully admitted (e.g., on a visa of some sort), and who remain present unlawfully," there is no evidence that Congress intended for § 1226(a) to be so narrowly construed. *Lopez Benitez*, 2025 WL 2371588, at *8.

Lastly, several courts have highlighted that the Government's interpretation of § 1225(b)(2)(A) is inconsistent with the Laken Riley Act, *see* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (codified as amended at 8 U.S.C. § 1226(c)(1)(E)), which subjects noncitizens to mandatory detention if they are inadmissible under 8 U.S.C. § 1182 and are "charged with, arrested for, convicted of, or admit to having committed certain crimes." *Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434, at *7 (E.D.N.Y. Oct. 5, 2025) (citing 8 U.S.C. § 1226(c)(1)(E)). If the Government's interpretation of the statutory framework were correct, noncitizens subject to the Laken Riley Act would already be subject to mandatory detention under § 1225(b)(2)(A). As Judge Liman queried in *Tumba Huamani*: "Why, then, would Congress have thought it necessary to specifically add a provision making those noncitizens subject to mandatory detention if they are charged with certain crimes? The Government has no answer." 2025 WL 3079014, at *4; *see also Oliveira Gomes v. Hyde*, No. 25-cv-11571 (JEK), 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("If Section 1225(b) applied to noncitizens who are arrested on a warrant while residing in the

United States, it would render Section 1226(c)(1)(E)'s criminal conduct criterion superfluous whenever the noncitizen is inadmissible under Sections 1182(a)(6)(A) or (a)(7). Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected.").

Accordingly, the Court is persuaded by the reasoning in the large majority of cases "reject[ing] the notion that § 1225(b) applies to all . . . individuals," never lawfully admitted but present in the United States. *Lopez Benitez*, 2025 WL 2371588, at *8. For the reasons stated above, the Court concludes that Mr. Rivera Esperanza was not subject to mandatory detention under § 1225(b)(2)(A) in either 2023 or 2025.

## II.    Due Process

Having concluded that Mr. Rivera Esperanza was detained under 8 U.S.C. § 1226(a), the Court next turns to whether his detention violates the Due Process Clause of the Fifth Amendment. Courts in this Circuit and beyond have long held that undocumented immigrants, "of course, are entitled to due process." *Savane*, 2025 WL 2774452, at *7 (quoting *Zheng v. Mukasey*, 552 F.3d 277, 286 (2d Cir. 2009)). "[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

The Government asserts that Mr. Rivera Esperanza lacks a right to due process beyond what Congress authorized by statute and that, as a result, the Government has not violated his procedural or substantive due process rights under the Fifth Amendment. Resp'ts' Br. at 14–19. The Court disagrees. To deprive a noncitizen of his liberty interest—remaining free from confinement—some process is required. *See e.g.*, *Valdez v. Joyce*, No. 25 Civ. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025). When Mr. Rivera Esperanza was arrested after

appearing for what was expected to be a routine ICE check-in at 26 Federal Plaza, Pet. ¶ 2, he was not given "proper notice or any way to challenge his detention including access to a bond hearing before an Immigration Judge." *Id.* ¶ 22. The Government has not argued that Mr. Rivera Esperanza is a flight risk or a danger to the community, "or that there exists any other basis upon which they have determined that [he] should no longer be at liberty on [his] own recognizance." *Tumba Huamani*, 2025 WL 3079014, at *6; *see also Guzman Cardenas*, 2025 WL 3215573, at *3 ("Indeed, even today, Respondents do not argue that there is any factual basis upon which they have determined that [petitioner] should no longer be at liberty on [his] own recognizance—let alone that [he] is either a flight risk or a danger to the community."). In fact, there is nothing to reflect "(1) who made the decision to detain him, (2) when that decision occurred, (3) on what basis the decision to detain him was made, [or] (4) whether there was any material change in circumstances with respect to him that triggered his detention." *Lopez Benitez*, 2025 WL 2371588, at *11.[2]

Although § 1226(a) and its implementing regulations grants DHS broad discretion "to arrest and detain noncitizens," which includes revoking conditional parole, that discretion is still constrained by procedural due process. *Lopez Benitez*, 2025 WL 2371588, at *10; *Tumba Huamani*, 2025 WL 3079014, at *7. Even granting the Government the wide latitude that Congress intended, "Due Process still requires that such discretion actually be exercised—i.e., that some determination actually be made." *Tumba Huamani*, 2025 WL 3079014, at *7. Here, "there is nothing to suggest that DHS exercised any discretion *at all* in detaining" Mr. Rivera Esperanza. *Lopez Benitez*, 2025 WL 2371588, at *11 (emphasis in original). Mr. Rivera Esperanza had

---

[2] Underscoring the arbitrariness of Mr. Rivera Esperanza's redetention, the Government acknowledged that "[t]he Supervisory Detention and Deportation Officer incorrectly checked the box on Form I-220A noting that Rivera Esperanza failed to comply with the conditions of his release." Giraldo Decl. ¶ 14.

previously appeared for all his scheduled immigration court appearances and ICE check-ins, and there is no mention anywhere in the record that the Government had any reason to suspect that he became a flight risk or danger to the community.

Given the "complete absence of any reason for Petitioner's arrest under Section 1226, either in the record or in the briefing," this Court, like so many before it, finds that Mr. Rivera Esperanza's detention violated the Due Process Clause of the Fifth Amendment. *Tumba Huamani*, 2025 WL 3079014, at *7. While the Government could have detained Mr. Rivera Esperanza pending the adjudication of his pending asylum claim, it would have needed to provide some process. *Guzman Cardenas*, 2025 WL 3215573, at *3; As Judge Ho stated in *Lopez Benitez*, "Reading § 1226(a) as requiring an initial detention decision by DHS is the only way to make sense of the broader statutory and regulatory scheme, which provides for an opportunity to appeal a detention decision to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors." 2025 WL 2371588, at *10; *see also Tumba Huamani*, 2025 WL 3079014, at *8 ("The implementing regulations of the INA clarify that the bond hearings are provided for the purpose of custody *re*-determination—a hearing held by an immigration judge after ICE makes its initial decision to detain. . . . Accordingly, such a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause."); *Barco Mercado*, 2025 WL 3295903, at *11 ("When ICE agents redetained [petitioner] as he was leaving a routine immigration court hearing, they appear to have acted automatically but nevertheless pursuant to the administration's July 2025 edict even as they later used paperwork referring to Section 236. . . . Acting automatically is the opposite of exercising discretion.").

As Judge Ho put it: "[T]reating attendance in immigration court as a game of detention roulette is not consistent with the constitutional guarantee of due process." *Lopez Benitz*, 2025 WL 2371588, at *15. And the "suggestion that government agents may sweep up any person they wish, for [no] reason [whatsoever] . . . so long as the person will, at some unknown point in time, be allowed to ask some other official for his or her release offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025). Accordingly, the Court finds that the Government violated Mr. Rivera Esperanza's right to due process.

### III.    Administrative Exhaustion

Having found that the Government's redetention of Mr. Rivera Esperanza violated his constitutional right to due process, the final issue to consider is whether he must first exhaust his administrative remedies before this Court can grant relief. Mr. Rivera Esperanza argues that he should be exempt from the exhaustion requirement because the "deprivation of [Petitioner's] liberty, by itself, constitutes a serious hardship," warranting excusal of administrative exhaustion. Pet. ¶¶ 42–44. The Government responds that even if the Court finds that § 1226(a) governs, at most, Mr. Rivera Esperanza is entitled only to a bond hearing, and not to release. Resp'ts' Br. at 20–22.

"There is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention." *See Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014). Courts may excuse a failure to exhaust when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d

17

51, 62 (2d Cir. 2003), *as amended* (July 24, 2003).

Most courts in this district, which have held that petitioners are excused from exhausting their administrative remedies, have done so on the basis of the fourth exemption: that a petitioner had raised a "substantial constitutional question." *See e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *14, *Tumba Huamani*, 2025 WL 3079014, at *7–8; *Guzman Cardenas*, 2025 WL 3215573, at *3. Under that exemption, courts have held that given "Respondents' failure to conduct any kind of individualized assessment *before* detaining him—any post-deprivation review by an immigration judge would be inadequate. This is particularly so given that detention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded." *Lopez Benitez*, 2025 WL 2371588, at *14. The circumstances here are just the same. While a bond hearing may have been an appropriate remedy if the petitioners had complained "about an abuse of discretion by a DHS officer, or that [they were] . . . subject to prolonged detention," *Tumba Huamani*, 2025 WL 3079014, at *7, in those cases, like here, petitioners rightly argued that "DHS exercised no discretion whatsoever" in detaining them. *Id.*

This Court, however, also holds that Petitioner is excused from exhausting his administrative remedies on another basis: namely, that it would be futile in light of ICE's position that § 1225(b)(2)(A) applies and the BIA's decision in *Matter of Yajure Hurtado*. The case of *Romero Perez v. Francis* is instructive here. In *Romero Perez*, Judge Koeltl recently ordered that a bond hearing be held within seven days. 2025 WL 3110459, at *4. The immigration judge, however, refused to hold a hearing on the merits, and denied the bond for lack of jurisdiction— based on an argument the district court had expressly rejected: that *Matter of Yajure Hurtado* required it to apply § 1225(b)(2)(A) and not § 1226(a). *Id.* at *3 ("[I]t is the province of the courts—not the agency—to 'authoritatively interpret' the statute.") (quoting *Loper Bright Enters.*

*v. Raimondo*, 603 U.S. 369, 402 (2024)). As a result, petitioner was forced to file an emergency motion seeking enforcement of the district court's order. No. 25-cv-8112, Dkt. No. 31 (Nov. 10, 2025). Following that emergency motion, the immigration judge scheduled a second hearing to grant bail. *See* No. 25-cv-8112, Dkt. No. 32, at 1 (Nov. 13, 2025). However, as soon as bail was granted, the respondents invoked an automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2), barring petitioner's release. No. 25-cv-8112, Dkt. No. 33, at 1 (Nov. 13, 2025). Only then, after the petitioner was denied the opportunity to be released twice and had to file two emergency motions with the district court, was he released. *See* No. 25-cv-8112, No. 34 (Nov. 14, 2025). Similarly, in *Chiquito Barzola v. Delaney Hall Detention Facility Newark, NJ*, the court ordered a bond hearing at which § 1226(a) applied, 25-cv-17326 (MEF) (D.N.J. Dec. 1, 2025), Dkt. No. 10. But at the hearing, the immigration judge stated that "she lacked jurisdiction to release the Petitioner because the case was controlled by *Matter of Yajure Hurtado*," and denied bond. No. 25-cv-8112, Dkt. No. 15.[3] These instances reinforce the Court's concern that ordering a bond hearing would not offer a genuine opportunity for adequate relief.

Mr. Rivera Esperanza has sought release, which "is at its core a remedy for [his] unlawful executive detention," should the Court find that his right to due process was violated. *Munaf v. Geren*, 553 U.S. 674, 693 (2008); Pet. ¶ 9. Since the Court has determined that the Government violated Mr. Rivera Esperanza's right to due process under the Constitution by providing "no process at all," *Tumba Huamani*, 2025 WL 3079014, at *9, and given the strong possibility that the immigration court would defy this Court's order to hold a constitutionally adequate bond hearing pursuant to § 1226(a), as it has in the past, Mr. Rivera Esperanza is entitled to immediate

---

[3] In *Chiquito Barzola*, the immigration judge also found that the petitioner was a flight risk, which the district court held complied with its order that § 1226(a) governed the detention. *See* 25-cv-17326, Dkt. No. 15.

release.[4]

### IV.    Attorneys' Fees

Finally, Petitioner seeks an award of reasonable fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). Pet. at 18. Under the EAJA, a court shall award to a "prevailing party" reasonable fees and expenses incurred in a "civil action" against the United States unless the court finds that "the position of the United States was substantially justified." 28 U.S.C § 2412. "A party prevails if the court grants relief to the party based on 'an assessment of the merits' and thus 'unquestionably' and 'materially alter[s] the existing legal relationship between the parties.'" *Barco Mercado*, 2025 WL 3295903, at *13 (quoting *Vacchio v. Ashcroft*, 404 F.3d 663, 674 (2d Cir. 2005)). Civil actions are understood to include habeas petitions "challenging immigration detentions." *Id.*

Here, Mr. Rivera Esperanza is the prevailing party in a civil action, and the Government's position "was not substantially justified," since it does not "and has never had a reasonable basis in statutory text, structure, or history." *Id.* Mr. Rivera Esperanza is thus entitled to reasonable fees and costs. He may submit an application for fees and costs pursuant to 5 U.S.C. § 504 and 28 U.S.C. 2412 by January 8, 2026.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is granted. Consistent with the Court's prior order, the Government confirmed that that Mr. Rivera Esperanza was released shortly after the November 12th hearing. Pending a final determination in his removal and asylum proceedings, Mr. Rivera Esperanza shall remain free of detention or any other restraint

---

[4] Having found that Mr. Rivera Esperanza's rights under the Fifth Amendment were violated when the Government detained him on October 21, 2025, the Court does not reach his alternative arguments that his detention violated the Fourth Amendment or the INA. *See* Pet. ¶¶ 51–66.

under the immigration laws of the United States, unless the Government can establish that he violated the conditions of his release outlined in the January 2024 Order of Release on Recognizance. The Clerk is respectfully directed to close this case.

SO ORDERED.

Dated:      December 8, 2025
              New York, New York

_____
Ronnie Abrams
United States District Judge